23

United States District Court
Southern District of Texas
Filed
OCT 14 2003
Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS ALEJANDRO GARZA, Plaintiff, * * * v. * Civil Action No. B-02-154 * UNITED STATES OF AMERICA, Defendant. * *

***DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT***

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, Defendant herein, opposes the "Plaintiff's Motion for Leave to File First Amended Complaint" which was received by its counsel of record on September 22, 2003. The Defendant submits the following in support of its opposition:

1. Plaintiff filed his lawsuit on July 29, 2002, alleging that injuries he received were the result of the Defendant's negligence "...by failing to use ordinary diligence to keep its prisoners safe and free from harm", and that this negligence "was a proximate cause of serious and permanent injuries suffered by the plaintiff." See Plaintiff's Complaint at para. 6; the Complaint also cites to 18 U.S.C. 4042.

2. The United States filed an answer denying the allegations made against it. On September 5, 2003, the United States filed a motion to dismiss and alternative motion for summary judgment premised upon the discretionary function defense set forth at 28 U.S.C. § 2680(a).

3. In an attempt to overcome the arguments set forth in the United States' motion and supporting brief, Plaintiff filed a motion seeking leave from this Court to amend his complaint. At paragraph 1 of his motion for leave, Plaintiff indicates that information derived from the discovery has given him a basis to "more fully understand his claim" and that he now wishes to be "more specific in his allegations."

4. At paragraphs 6 through 12 of his proposed amended complaint, Plaintiff finally sets forth factual allegations underlying his complaint. In these paragraphs, Plaintiff attempts to suggest that there was only "one guard" present to supervise over a

hundred inmates and that "the guard responsible for supervising inmates in the recreational yard was under specific post orders to patrol and supervise the recreation yard and to prevent inmates from gathering into large groups." Attached hereto as Defendant's Exhibit "A" is a copy of the post order for the recreation yard that was provided to the Plaintiff in discovery. The specific Post Order to which Plaintiff refers is at page 8[1] of Defendant's Exhibit "A" wherein it states, "[i]nmates *should* not be allowed to gather in large groups." (Emphasis added). This Post Order does not say "must not" it says "should not". In not using such mandatory language, the Bureau of Prisons' Post Order once again reflects the need for officials to exercise discretion in determining what may or may not be a large group in any one particular situation.

5. Furthermore, the Defendant respectfully refers this Court to it Defendant's Exhibit 2 submitted in support of the government's motion to dismiss and alternative motion for summary judgement. Defendant's Exhibit 2 is a Declaration signed by Allen Beard. Allen Beard was the Captain at the Federal Correctional Institution (FCI), Three Rivers, on February 6, 2001, the date Plaintiff sustained his injuries. At pages two and three of this exhibit, Mr. Beard explains that:

> *[c]entral to the BOP's management practices is the principle that all staff members are considered first to be correctional workers first, then to be teachers, case managers, secretaries, or whatever their position titles may be. The significance of this principle is that every staff member bears responsibility for management of inmates, so that the custodial presence of staff members in a given place at a given time is measured by the number of staff members there, not merely the number from the Correctional Services Department. For example, on the Recreation Yard, where the Plaintiff was assaulted, the custodial presence would include Correctional Services staff, Recreation Department staff, and any other staff in the vicinity.*

6. Although the Plaintiff suggests that he has learned of new information as a result of discovery, he fails to specifically provide this Court with that information. For example, where is the evidence that there was only one guard on duty responsible

[1]The page number reference indicated refers to the circled number located at the lower right hand margin of the exhibit.

for supervising the inmates? Where is the evidence that he learned of by way of discovery that shows that "the guard was not patrolling the recreation yard or supervising the inmates"? As shown be Defendant's Exhibit 1, attached to its motion to dismiss and alternative motion for summary judgement, at least three correctional workers present at the time of the fight began. (See Defendant's Exhibit 1 at pps. 9, 19, 23,25 and 28).

7. In his proposed amended complaint, Plaintiff continues to assert that the Defendant was negligent because it failed in its obligation to "keep Plaintiff safe and free from harm." See proposed Plaintiff's First Amended Complaint at para. 13. In addition to citing to the Eighth Amendment to the United States Constitution, Plaintiff again cites to 18 U.S.C. Section 4042 in support of his argument.

8. Looking at his claims from the perspective of 18 U.S.C. Section 4042, Plaintiff's claims still fail to overcome the discretionary function defense raised by the United States. By citing to 18 U.S.C. 4042, Plaintiff suggests that since he was injured while in the custody of the Bureau of Prisons, the government was negligent in its general duty to provide protection for him–one of its inmates. However, "even though a statute or regulation imposes a general duty on a government agency, the discretionary function exception may still apply if the agency retains sufficient discretion in fulfilling that duty." Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998). In Cohen, the Eleventh Circuit reasoned that:

> [w]hile it is true that § 4042 sets forth a mandatory duty of care, it does not, however, direct the manner by which the Bureau of Prisons must fulfill this duty. The statute sets forth no particular conduct the Bureau of Prisons personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.'" Id. at 1343, citing Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997). See also, Buchanan v. United States, 915 F.2d 969 (5th. Cir. 1990).

9. Likewise, looking at Plaintiff's claims from the perspective of the Eighth Amendment, Plaintiff's claims would again fail. The United States has not waived its sovereign immunity for constitutional tort claims. The Federal Tort Claims Act is a limited waiver of sovereign immunity for common law tort claims only. United States v. Testan, 424 U.S. 392, 399 (1976) (citing United States v. Sherwood, 312

U.S. 584, 586 [1941]). This waiver cannot be implied, but must be unequivocally expressed. Id. See also, Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2628, 2701, 69 L.Ed. 2d 548 (1981) and Leleux v. United States, 178 F.3d 750, 754 (5th Cir. 1999). As such, this Court would lack jurisdiction to hear any constitutional tort claims alleged against the United States.

WHEREFORE, PREMISES CONSIDERED, the United States prays that this Court deny the Plaintiff's motion for leave to amend his Complaint on the basis that it does nothing to give the Court jurisdiction over his claims. In addition, the United States prays that this Court grant its motion to dismiss; or in the alternative, grant its motion for summary judgement which was filed with this Court on September 5, 2003.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

NANCY L. MASSO
Assistant U.S. Attorney
600 E. Harrison, #201
Brownsville, TX 78520
Tel: (956) 548-2554
Fax: (956) 548-2549
Texas State Bar No. 00800490
Federal I.D. No. 10263

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the true and foregoing "Defendant's Response in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint" was mailed on this the 14th day of October 2003 via Certified Mail, Return Receipt Requested to Barry R. Benton, Attorney at Law, 284 Ebony Avenue, Brownsville, TX 78520.

NANCY L. MASSO
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| LUIS ALEJANDRO GARZA, Plaintiff, | * * * | |
| v. | * * | Civil Action No. B-02-154 |
| UNITED STATES OF AMERICA, Defendant. | * * | |

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Today, this Court considered the "Plaintiff's Motion for Leave to file First Amended Complaint." In doing so, this Court has considered the arguments of counsel, the pleadings on file as well as all exhibits on file. Based upon this review and consideration this Court finds that the Plaintiff has failed to set forth an adequate basis that would warrant or otherwise justify the filing of an amended complaint.

THEREFORE, IT IS ORDERED, that the "Plaintiff's Motion for Leave to File First Amended Complaint" be DENIED.

Signed this ______ day of ______________________, 2003.

______________________________
HILDA G. TAGLE
UNITED STATES DISTRICT JUDGE

# EXHIBIT 3

# USA RESPONSES TO REQUESTS FOR PRODUCTION

*LUIS ALEJANDRO GARZA*

*vs.*

*UNITED STATES OF AMERICA*

Civil Action No. B-02-154
SDTX

DEFENDANT'S
EXHIBIT
A

**FCI THREE RIVERS**
**THREE RIVERS, TEXAS**

DO NOT WRITE ON POST ORDERS

SPECIFIC POST ORDERS FOR

**RECREATION PATROL**

**DUTY HOURS:** 6:00 A.M. to 2:30 P.M.

**AREA OF RESPONSIBILITY:** SECURITY OF FEDERAL INSTITUTION AND CAMP

**EQUIPMENT:** RADIO, KEY RING C-51, C-52, AND HANDCUFFS

6:00 AM Report for duty in the prescribed uniform and report to the Operations Lieutenant. Receive any pertinent information concerning the compound or your post. Proceed to the Control Center and draw key ring C-51 and C-52, a pair of handcuffs, and a radio. Proceed to the Recreation metal detector station and conduct a test and inspection of the metal detector.

Your post assignment is the recreation yard to provide direct supervision of inmates entering and exiting the recreation yard during movement and provide security coverage of the recreation yard during non movement periods. You will test and inspect the metal detector upon your arrival of duty.

During inmate movement periods, you will ensure all inmates pass through the metal detector. Inmates wearing steel toe shoes will be required to remove their shoes prior to passing through the metal detector.

During non movement periods, you will patrol the recreation yard. Announce to the Perimeter Patrols that you will be on the Yard. You will monitor and inspect all security devices and be alert for any physical security concerns or weakness. Report all discrepancies and signs of abnormal inmate activities immediately to the Operations Lieutenant and/or the Special Investigation Supervisor.

The majority of your time will be spent monitoring inmate activities. You will not be responsible for controlling inmate traffic to and from the secure weight lifting area.

In the event of an emergency, i.e., (body alarm, disturbance, etc.) You are to remain in the recreation yard, ensuring the yard gate is secured, ceasing all inmate movement to and from the recreation yard, unless otherwise instructed by the shift supervisor.

7:00 AM    (Approximately) During the weekdays the dining hall will be closed at this time.

7:30 AM    (Approximately) During the weekends and holidays the dining hall will be closed at this time.

7:50 AM    The compound will now be closed for inmate movement. All inmates will be either at their work detail, or in their assigned housing units.

8:25 AM    Assume supervision of the recreation yard as another period of inmate movement has just started. Patrol the entire yard pat searching inmates. Make rounds of the recreation and gym area. Be flexible. You may be called upon to assume varying duties for the Activities Lieutenant.

8:35 A.M.    Compound will now be closed for inmate movement. Continue patrolling the Recreation area. These periods of 10 minute inmate movement will continue throughout the day.

9:30 A.M.    (WEEKENDS AND HOLIDAYS) Yard recall. Ensure that all inmates return to their assigned areas in preparation for the 10:00am count. Inform the Perimeter Patrols that the Rec. Yard is clear and you will be leaving the yard for count.

10:00 A.M.    Count on weekends and holidays will commence at this time. You may be assigned an area to count and you also may be responsible for picking up count slips from units and details and taking them to Control Center. Ensure that the count slips are in proper format and have no markovers or corrections.

10:30 A.M.    (Weekdays) Yard recall.

You will make security inspections of the recreation yard, perimeter fence, and conduct routine searches of the recreation yard. In addition, you will use the "Garret GT 1000" hand-held metal detector to scan the ground surfaces for hidden weapons and contraband.

12:00 PM Upon completion of the noon meal, controlled movements will commence. Monitor the inmates entering and exiting the recreation yard through the metal detector and conduct random pat searches of inmates. This will be period of high movement on the compound. Be alert for inmates attempting to transport contraband to the recreation yard.

2:25 PM Report to the Lieutenant's Office and log in all area searches that you completed.

2:30 PM Your tour of duty is complete. Turn in your keys and other equipment the Control Center.

NOTE: These post orders are issued as a guideline for the officers assigned to this post, and are not intended to describe in detail all of the officers responsibilities. Good judgement and initiative are expected in all situations.

DO NOT LEAVE YOUR POST WITHOUT THE APPROVAL OF THE WATCH SUPERVISOR OR UNTIL PROPER RELIEF HAS BEEN PROVIDED.

Larry Sandson, Captain

**FCI THREE RIVERS**
**THREE RIVERS, TEXAS**

DO NOT WRITE ON POST ORDERS

SPECIFIC POST ORDERS FOR

**RECREATION PATROL**

**DUTY HOURS:** 2:30 P.M. to 10:30 P.M.

**AREA OF RESPONSIBILITY:** SECURITY OF FEDERAL INSTITUTION AND CAMP

**EQUIPMENT:** RADIO, KEY RING C-51, C-52, AND HANDCUFFS

2:30 PM Report for duty in the prescribed uniform and report to the operations Lieutenant. Receive any pertinent information concerning the compound or your post. Proceed to the Control Center and draw key ring C-51 and C-52, a pair of handcuffs, and a radio. Proceed to the Metal Detector Station and conduct a test and inspection of the metal detector.

Your post assignment is primary the recreation yard to provide direct supervision of inmates entering and exiting the recreation yard during movement and provide security coverage of the recreation yard during close movements. Announce to the Perimeter Patrols that you will be on the Yard. You will conduct test and inspection of the metal detector upon your arrival of duty.

During mass inmate movements, you will ensure all inmates pass through the metal detector. Inmate wearing steel toe shoes will be required to remove their shoes prior to passing through the metal detector.

During closed movement, you will patrol the recreation yard. You will monitor and inspect all security devices and be alert for any physical security concerns or weakness. Report all discrepancies and signs of abnormal inmate activities immediately to the operations lieutenant and/or the special investigation supervisor.

The majority of your time will be spent monitoring inmate activities. You will



not be responsible for controlling inmate traffic to and from the secure weight lifting area.

In the event of an emergency, i.e., (body alarm, disturbance, etc.) You are to remain in the recreation yard, ensuring the yard gate is secured, ceasing all inmate movement to and from the recreation yard, unless otherwise instructed by the shift supervisor.

3:30 PM The recreation yard will be cleared of all inmates. You will make security inspections of the recreation yard, perimeter fence, and conduct routine searches of the recreation yard. In addition, you will use the "Garret GT 1000" hand-held metal detector to scan the ground surfaces for hidden weapons and contraband.

5:00 PM After a good count has been established, proceed to the recreation gate. The Operation Lieutenant will release inmates to the recreation yard, prior to feeding the evening meal to the general population. Inmates may enter the yard at this time, but will not leave until the last call for the evening meal. Make frequent pat searches of inmates passing through your area.

5:55 PM Upon completion of the evening meal, controlled movements will commence. Monitor the inmates entering and exiting the recreation yard through the metal detector and conduct pat searches of selected inmates. This will be period of high movement on the compound. Be alert for inmates attempting to transport contraband to the recreation yard.

6:05 PM Inmate movement will cease at this time, Continue your assigned duties and begin making watch calls to the Control Center Officer, via telephone extension 333.

6:55 PM Open movement commences. Monitor inmate activities on the recreation yard.

7:05 PM Movement closed. Monitor inmate activities on the recreation yard.

7:55 PM Open movement commences. Process inmates entering and exiting the recreation yard through the metal detector.

8:05 PM Movement closed, monitor inmate activities on the recreation yard.

8:30 PM The recreation yard is now closed for the evening. Screen all inmates through the metal detector in preparation for the 9:30PM count. Conduct a visual search of the recreation yard to ensure all inmates have exited.

After determining all inmates have been removed from the area, begin a search of the yard for contraband and hidden weapons by use of the hand-held metal detector. At the completion of your searches, conduct a security inspection of the perimeter fence. Make appropriate entries into the shakedown log book and security inspection report, which is secured in the office of the Recreation Specialist and Lieutenant's Office.

10:00 PM Assist in the official count and the collection of count slips and outside door keys from all of the unit officers. Once you have collected all the count slips and unit keys, take them to the Control Center.

10:25 PM Report to the Lieutenant's Office and Log in all area searches that you completed.

10:30 PM Your tour of duty is complete. Turn in your keys and other equipment the Control Center.

NOTE: These post orders are issued as a guideline for the officers assigned to this post, and are not intended to describe in detail all of the officers responsibilities. Good judgement and initiative are expected in all situations.

**DO NOT LEAVE YOUR POST WITHOUT THE APPROVAL OF THE WATCH SUPERVISOR OR UNTIL PROPER RELIEF HAS BEEN PROVIDED.**

Larry Sandson, Captain



**FCI THREE RIVERS**
**THREE RIVERS, TEXAS**

DO NOT WRITE ON POST ORDERS

SPECIFIC POST ORDERS FOR

**RECREATION PATROL**

The primary responsibility of the Recreation Patrol Officer is to coordinate with the Shift Lieutenant and the Compound # 1 Officer for the supervision of inmate activity within all areas of the inner perimeter (i.e., gym, rec. yard, leisure center, etc.). The Recreation Patrol Officer will ensure all areas are covered. In the event of an emergency in any area of the institution, you must coordinate with the Recreation Staff to respond while ensuring that the Recreation Area is not left unsupervised. All activities, routine or otherwise, must be coordinated through the Shift Lieutenant and Recreation Staff.

**INMATE ACCOUNTABILITY**

As the Recreation Patrol Officer, with the assistance of the Recreation Staff you are responsible for maintaining accurate accountability of all inmates on the Recreation Yard. Coordinate with the Compound # 1 Officer for specific assignments during counts. All inmate movement ceases during any count.

It will be your responsibility in assisting the Compound #1 Officer to take all count slips from the compound to the Control Center. Coordinate with the other compound staff for their assistance. You should check each count slip and ensure that it is correct in format and has no markovers or corrections. Once you have collected all of the count slips and are satisfied that they are correct as stated above, turn them into the Control Center where they will be checked for accuracy.

**INMATE SUPERVISION**

The main objective of all BOP staff is the effective supervision of all inmates in whatever

manner necessary. Staff should never over extend their vested authority, however use fair and impartial enforcement of all rules and regulations.



As the Recreation Patrol Officer you are responsible for the supervision of inmates on the compound. Inmates should not be allowed to gather in large groups. Any movement of inmates after 10:00 PM must have the Shift Lieutenant's approval and all inmates must be escorted. Control and Mobile Officers are to be notified of the movement. Inmates being escorted from general population to the Special Housing Unit will be restrained from behind. All inmate traffic will pass through the metal detector.

**SECURITY INSPECTIONS/SEARCHES**

One of the most effective techniques available to staff, for ensuring the security of the institution is maintained, is the conducting of daily security inspections and searches. This helps to combat escape attempts, the introduction of contraband, and increases the overall safety and sanitation of the institution. EVERY staff member is responsible for ensuring the security of the institution is maintained. All areas of the institution will have a security inspection conducted daily. Immediately report and document, on the appropriate security inspection report, any discrepancies found.

As the Recreation Patrol Officer you are responsible for assisting the Recreation Staff in the security of the entire Recreation area . You may be assigned to conduct security inspections of the perimeter fence.

**FENCE CHECK PROCEDURES**

All zones are to be tested by using the hook on the pole to pull down on the fence to simulate someone climbing on it; then using the opposite end, rake across the fence to simulate someone attempting to cut the fence. These simple tests should activate the alarm be certain that you notify the Control Center prior to conducting the test, and communicate which zone you are getting ready to activate. You may want one of the perimeter patrol officers to help you by relaying messages for you to the Control Center. Each time you activate an alarm you must wait for the Control Center Officer to reset that alarm before you make another test. You will use the channel two frequency at all times when communicating with the Control Center while conducting the fence alarm zones tests.

A form will be maintained in the Control Center and shall be filled out completely with all pertinent information recorded. If malfunctions or security breaches are found, circle the area on the map and enter any other comments or explanations in the space provided.

All breaches or malfunctions will be reported to the Shift Lieutenant immediately.

**SEARCHES**

When conducting searches, there are two (2) primary areas of concern: inmates and areas. The objective of searches is to detect contraband, prevent escapes, maintain institutional sanitation standards, and to eliminate fire and safety hazards.

Inmates and their living, work, and leisure areas can be searched by staff without notice to or prior approval from the inmate and without the inmate's presence. Searches should be conducted routinely but at irregular times so as to not set a pattern.

**METHODS OF SEARCHING**

**PAT SEARCHES**

As the Recreation Patrol Officer, numerous pat searches are to be conducted on a routine basis. Pat searches are used more frequently than others. Inmates entering and departing the Recreation area should be searched periodically.

Any inmate observed acting suspiciously or observed carrying books, boxes, or any other article(s) not normally observed should also be searched.
(Refer to general post orders for pat search procedures)

**VISUAL SEARCHES (STRIP)**

Visual searches may be conducted anytime staff believes the situation warrants (i.e.; concealment of contraband, possession of narcotics or paraphernalia, or possession of weapons.

Strip searches must be conducted in a secluded area and by a staff member of the same sex. In cases of emergencies, staff members of the opposite sex may conduct strip searches. All strip searches must be documented in the Visual Search Log maintained in the Lieutenant's Office. (Refer to general post orders for strip search procedures)

**USE OF THE METAL DETECTOR**

Metal detectors will be used on a routine basis. When using the walk through metal detector, the inmate will empty his pockets, placing all items on the inspection table. The inmate will then be instructed to pass through the metal detector. If the metal detector indicates a negative reading, the inmate's personal belongings will be inspected and returned. The officer will conduct random

pat searches of all inmates on an irregular basis.

If the metal detector indicates positive, the inmate will be instructed to submit to a pat search.

**RESPONDING TO EMERGENCIES**

All emergencies (i.e., 222, body alarms, no-dial, fire alarms, etc.) will be responded to by all available staff. The Compound #1 Officer will be responsible for coordinating the response with the Shift Lieutenant. Under no circumstances will the Recreation area be left unsupervised, even during an emergency.

**FIRE ALARMS**

All fire alarms are to be considered actual. During the hours of 10:00 PM to 6:00 AM, the housing units will not be evacuated unless instructed to do so by the Shift Lieutenant. The source of the alarm will be determined and in the event evacuation is deemed necessary, all areas of the unit will be searched and cleared. Inmates from the evacuated unit will be assembled in the compound area between the units. During the hours of 6:00 AM to 10:00 PM, all inmates will be evacuated from the unit where the alarm was activated. In cases where there is an actual fire that threatens the safety of staff and/or inmates, the Shift Lieutenant will notify all concerned staff that the established fire emergency plan should be implemented.

**MEDICAL EMERGENCIES**

The first staff member to arrive at the location of a medical emergency, involving either staff or inmate, will ensure the appropriate alarm is activated depending upon the seriousness of the emergency. The Duty Medical staff will be notified immediately and any initial instructions will be obtained from them. All staff should be available to render first aid (CPR, life saving techniques, etc.) until arrival of medical staff or the injured parties are transported to the hospital.

ESCAPE ATTEMPTS

In the event that you observe an escape attempt in progress, immediately notify Control. Do not delay, time is of the essence and could mean the difference between a failed or successful escape.

Caution must be exercised in this situation. Do not attempt to physically restrain the inmate(s) unless you are sure of controlling the situation and have adequate staff assistance. Ensure the area where the escape attempt is occurring is cleared of all bystander and uninvolved inmates. Give verbal orders to the escapee(s) to cease or halt their actions. Do not rush up to the perimeter fence, as you could place yourself in the line of fire from the Mobile Officers should the use of firearms become necessary. The possibility also exists that the mobiles may not be able to visually identify you and you could be mistaken for an inmate.

10

**HELICOPTER ESCAPES**

The possibility exists that an escape might be attempted by the use of a helicopter. This situation calls for extreme caution because the persons in the helicopter most likely will be armed. Obtain as much information as possible about the helicopter and passengers (i.e., color, markings, registration number, number of occupants, direction of travel, etc.). Instruct all inmates to clear the area and if at all possible, prevent the involvement of all others in the escape. Use good judgement and do not place yourself or others in any unnecessary jeopardy.

**HOSTAGES**

If a hostage situation occurs, under no circumstances will any inmate be allowed exit from the institution. Orders given by staff held under duress, regardless of rank or position, will not be followed.

Larry Sandson, Captain

Page 5 of 5

SENSITIVE LIMITED OFFICIAL USE
January 3, 2000

(12)