UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 0 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| LUIS ALEJANDRO GARZA, Plaintiff, | § § § |
| v. | §  CIVIL ACTION NO. B-02-154 |
| UNITED STATES OF AMERICA, Defendant. | § § § § |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment (Docket No. 18). For the following reasons, this Court recommends that the Defendant's motion be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff, Luis Alejandro Garza, is serving two concurrent 324-month terms of imprisonment for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine. Although Plaintiff is presently incarcerated in the federal penitentiary in Pollock, Louisiana, the events leading to this lawsuit occurred while Plaintiff was a prisoner at the Three Rivers Correctional Facility in Three Rivers, Texas. There, on February 6, 2001, the Plaintiff was attacked and, as both parties concede, severely beaten by numerous other inmates during what Plaintiff alleges was a gang related incident.

As a result of the above described events, Garza filed the instant suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et. seq., alleging that the negligence of Bureau of Prison employees was a proximate cause of his injuries.

Subsequent to answering, the Defendant filed a Motion to Dismiss and Alternative Motion for Summary Judgment Pursuant to Rules 12(b)(1), 12(b)(6) and 56(b) of the Federal Rules of Civil Procedure (Docket No. 18). Along with that motion, the Defendant filed a supporting brief and Defendant's Exhibits 1 and 2 (Docket Nos. 18 and 19). The Defendant's

1

motion and supporting documents were filed pursuant to the premise that the discretionary function exception to the FTCA bars Plaintiff's suit.

The Plaintiff, after being granted an extension of time to reply, filed a Motion for Leave to File First Amended Complaint (Docket Nos. 22 and 26), and a response to the Defendant's Motion to Dismiss (Docket 24).

Leave to file an amended complaint was granted. In his First Amended Complaint (Docket No. 26, Exhibit 1), the Plaintiff re-urged his allegations that the negligence of prison employees was a proximate cause of his injuries; however, the Plaintiff's allegations are now much more specific. In particular, the Plaintiff now argues that the failure of the recreation yard guard to follow specific post orders pertaining to patrolling, supervising, and prohibiting large groups of inmates to gather was a proximate cause of his injuries.

A hearing was held on January 15, 2004, at which both parties were allowed to argue their respective positions regarding, generally, the Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment and, more specifically, the applicability of the discretionary function exception. The issues raised in Defendant's motion are now ripe for judgment.

## ANALYSIS

I. *LEGAL STANDARDS*

As previously mentioned, the Government filed a motion to dismiss pursuant to both 12(b)(1) and 12(b)(6), and an alternative motion for summary judgment pursuant to Rule 56. A supporting brief and two exhibits were attached to the motion. As a preliminary matter, the Court will attempt to set out how it will proceed in analyzing the Government's multi-faceted motion.

It is helpful to keep in mind that the only issue raised in the Government's motion involves the contention that the discretionary function exception applies to the case at hand and deprives the court of subject matter jurisdiction. *See Buchanan v. United States*, 915 F.2d 969,

2

970 (5th Cir. 1990); *see also* 28 U.S.C. § 2680(a). Thus, the attack –no matter how it is labeled– is jurisdictional in nature.

A. <u>Dismissal Standard</u>

Defendant's motion to dismiss is brought under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), a plaintiff's claim may be dismissed when the court lacks jurisdiction over the subject matter of that claim. FED. R. CIV. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In particular, Rule 12(b)(1) authorizes the dismissal of a case for want of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Association of Mississippi, Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). A district court may dismiss a case for want of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).

Pursuant to Rule 12(b)(6), a plaintiff's claim may be dismissed for failure to state a claim upon which relief may be granted when, viewing the allegations in the plaintiff's complaint in the light most favorable to him and drawing all reasonable inferences in his favor, it appears certain that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Adolph v. Federal Emergency Management Agency*, 854 F.2d 732, 735 (5th Cir.1988); *Kaiser v. Aluminum & Chem Sales, Inc. v. Avondale Shipyard, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105 (1983).

Rule 12(b)(6) allows a court to eliminate actions that are fatally flawed in their legal premises and destined to fail, thus sparing the litigants the burdens of unnecessary pretrial and trial activity. See *Spivey, Jr., v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). In ruling on a motion to dismiss, a court should consider only those facts stated on the face of the complaint or

incorporated into the complaint by reference, and matters of which judicial notice may be taken. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); *McNamara v. Bre-X Minerals Ltd.*, 57 F.Supp.2d 396, 417 n.12 (E.D.Tex.1999).

   B.   Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Supreme Court has held that Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

In deciding a Motion for Summary Judgment, the Court is not to weigh the evidence in an effort to determine the truth of the matter; rather, the Court's function is to determine if there exists a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is determined to be genuine, or otherwise, according to the strength of the showing made in a motion's opposition, which must do more than simply show there is some metaphysical doubt as to the material facts; opposition must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585-87, 106 S.Ct.

1348. The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Id.* However, to meet its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting FED. R. CIV. P. 56(e)).

If the nonmoving party fails to make a sufficient showing of an essential element of a claim to which it has the burden of proof at trial, then the moving party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The moving party need not negate the elements of the nonmoving party's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Rather, the moving party need only "demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

Mindful of these considerations, the Court now turns to a general survey of the nature of the discretionary function exception before addressing how, specifically, that exception to the FTCA forms the basis of the substantive arguments found in the Government's motion.

II. *THE DISCRETIONARY FUNCTION EXCEPTION*

The FTCA generally authorizes suits against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also Berkovitz v. United States*, 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988).

The FTCA's broad waiver of sovereign immunity is subject to a number of exceptions; among them is the "discretionary function exception," which provides that no liability shall lie for:

>[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

According to the Supreme Court, this exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S.Ct 2755, 2761-62, 81 L.Ed.2d 660 (1984). If the government conduct at issue is determined to fall within the discretionary function exception to the FTCA, then the case should be dismissed for lack of subject matter jurisdiction. *Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990); *see also* 28 U.S.C. § 2680(a).

As numerous courts have discovered when attempting to apply the discretionary function exception, the contours of the exception elude precise definition. *See Varig Airlines*, 467 U.S. at 813 (noting the impossibility of defining "with precision every contour of the discretionary function exception"); *FDIC v. Irwin*, 916 F.2d 1051, 1053 (5th Cir.1990) ( "decades of litigation have yet to yield a clear demarcation between actionable torts and immune discretion ... [i]mprecision appears inevitable" (citation omitted)). The FTCA does not define "discretionary function," which has resulted in extensive litigation over the meaning of the term. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997). If the word "discretionary" were construed broadly, it would nullify the goal of the FTCA. *See id.*; *see also Pulaski v. Republic of India*, 212 F.Supp.2d 653, 656 (S.D. Tex. 2002) ("every act by every agent of a government could involve some discretion; grass could be mowed east to west or in a spiral"). Thus, "the statutory language does not apply to every situation in which there is an actual option to choose between courses of action and inaction." *Gotha*, 115 F.3d at 179.

"It is unnecessary –and indeed impossible– to define with precision every contour of the discretionary function exception." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. Yet the United States Supreme Court has provided guidance for determining whether the discretionary

function exception bars a suit against the Government. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). It has been stated that the nature of the conduct, and not the status of the actor, governs whether the exception applies. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1272, 113 L.Ed.2d 335 (1991).

In addition, and despite the imprecision inherent in the concept, the United States Supreme Court has developed a two-part test to determine whether governmental conduct is immune from suit under the discretionary function exception. *See Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536; *Cazales v. Lecon, Inc.*, 994 F.Supp. 765, 771 (S.D. Tex. 1997).

First, the court must consider whether the challenged conduct is a matter of choice for the acting employee. *Berkowitz*, 486 U.S. at 536. In other words, the conduct is considered discretionary if it involves an element of judgment or choice. *Id.* (citing *Dalehite v. United States*, 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953), for the proposition that "the exception protects the discretion of the executive or the administrator to act according to one's judgment of the best course"). "Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Berkowitz*, 486 U.S. at 536. In such situations, the "employee has no rightful option but to adhere to the directive." *Id.*; *see also Dalehite*, 346 U.S. at 36. Accordingly, in such a case there can be no discretionary act protected by the exception.

Second, if the challenged conduct involves an element of judgment or choice, a court must then determine whether that judgment is of the kind that the discretionary function was designed to shield. *Berkowitz*, 486 U.S. at 536. Though this stage of analysis may seem to involve circular logic, it is helpful to keep in mind that "the basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* (citing *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2764-65); *see also Denham v. United States*, 834 F.2d 518, 521 (5th Cir. 1987). "The exception, properly construed,

therefore protects only governmental actions and decisions based on considerations of public policy." *Id.* (citing *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968).

In an opinion not designated for publication, the Fifth Circuit noted that, "[b]efore it is possible to address whether a government action involved judgment or choice that is grounded in public policy, it is first necessary to identify the government action [being] challenged." *Lakomy v. United States*, 70 Fed.Appx. 199, 205, 2003 WL 21653988 at *6 (5th Cir. 2003). Although this initial step may seem logically superfluous, it is important to consider the implications of how the government conduct at issue is framed. In other words, portraying the conduct in a certain light may have the effect of directing a certain outcome. *See id.* (generally discussing the implications of how each party describes the nature of the conduct at issue). Accordingly, this Court will approach the issue cautiously in order to ensure that the government action being challenged is properly identified. *See id.*; *see also Berkovitz*, 486 U.S. at 540, 108 S.Ct. at 1961 (looking to plaintiff's complaint to determine the conduct at issue).

The Plaintiff's First Amended Complaint contains a section entitled "Duty and Breach of Duty," which states that:

> Pursuant to 18 U.S.C. Section 4042 and the Eighth amendment to the United States Constitution Defendant is obligated to keep Plaintiff safe and free from harm. The failure of the guard at the recreation yard to follow specific post orders pertaining to patrolling and supervising and prohibiting the gathering of inmates into large groups was a proximate cause of the assault on Plaintiff and the serious and permanent injuries he suffered.

Docket No. 26, Exhibit 1, p 3-4.

Accordingly, the "conduct" at issue is related to two specific post orders; namely, that (1) during time in question, a guard was under specific post orders to patrol and supervise the recreation yard; and (2) the guard supervising and patrolling was under specific post orders to prevent inmates from gathering into large groups.

III. *GOVERNMENT'S POSITION*

According to the Government, the discretionary function exception should apply to the case at hand for two reasons. Firstly, relying in large part on the case of *Buchanan v. United States*, 915 F.2d 969 (5th Cir. 1990), the Government argues that the mandatory duty to provide for the protection of prisoners articulated in 18 U.S.C. § 4042 does not direct a specific manner by which the Bureau of Prisons must fulfill this duty. *See Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998). Furthermore, according to the Government, because internal prison security is often a matter of officials acting quickly and using their best judgment, the acts of employees are by nature discretionary and policy based and thus fall under the discretionary function exception. *See generally Buchanan*, 915 F.2d 969.

The Government's second set of arguments regarding why the discretionary function exception should apply are more narrowly tailored to the specific arguments raised by the Plaintiff. According to the Government, the post orders relating to patrolling and not allowing large groups to gather are articulated in a general fashion due to the need for prison employees to exercise judgement regarding, for example, how many inmates may congregate at a specific time or place.[1] In other words, the Government believes that prison employees, when performing security related duties, are required to be afforded "minute to minute decision making" ability –*i.e.*, discretion. *See Buchanan*, 915 F.2d at 972. It is the Government's position that otherwise we would be "second guessing" the decisions of prison officials and exposing the Government to tort liability where Congress did not intend to do so. *Berkovitz*, 486 U.S. at 536-37, 108 S.Ct. at 1959.

IV. *PLAINTIFF'S POSITION*

---

[1] The Government points out that the order pertaining to not allowing a large group to gather is not directive, in that it uses the term "should" –as opposed to a more authoritative term, such as "will" or "shall." In addition, rather than provide that a specific number of inmates should not be allowed to gather, the order speaks in general terms of not allowing "large groups" to gather. A detailed analysis of the post orders at issue in this case begins on page eleven of this Report and Recommendation.

The central tenet of Plaintiff's position, as stated in his First Amended Complaint, is that Officer Deborah Romero failed to follow specific post orders, which led directly to the attack and his injuries. According to Plaintiff, Romero was under specific post orders to patrol and supervise the recreation yard, and to prevent inmates from gathering into large groups in the recreation yard. Plaintiff argues that Officer Romero failed to follow any of the aforementioned orders.

Not surprisingly, the Plaintiff is of the opinion that the guards actions relating to these orders do not fall under the discretionary function exception. Plaintiff focuses specifically on the actions of the guard on duty, arguing that she was under "Specific Post Orders" and therefore had no discretion regarding whether or not to patrol the yard, nor did she have discretion regarding whether or not to prevent a large group from gathering. According to Plaintiff, each post order prescribes a course of action for the guard to follow, and the guard had no option but to adhere to those directives. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958-59; *Commerce and Industry Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 571-72 (5th Cir. 2002) (discussing state law applied in same manner as discretionary function exception as described in *Berkovitz*). Therefore, according to Plaintiff, the Government action at issue does not fall under the discretionary function exception. *Id.*

The Plaintiff alternatively argues that if the guard's actions in relation to the specific post orders are determined to involve an element of choice or judgment, then the discretionary function exception would still not apply because the discretion involved is not of the type that the exception was designed to protect –*i.e.*, the pertinent action did not involve the permissible exercise of policy judgment. *Id.* According to the Plaintiff, if the discretionary function exception were extended to the post orders at issue in this case, the result would be that essentially no actions of any prison employee would be subject to tort liability; put another way, it is the Plaintiff's position that the Government is attempting to stretch the discretionary function exception too far. Plaintiff asserts that the guard's decision whether or not to patrol the yard and

10

whether 70 inmates constituted a large group were not decisions "grounded in regulatory policy," and thus not protected by the discretionary function exception. *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 1275 n.7 (1991).

V. *APPLYING THE DISCRETIONARY FUNCTION EXCEPTION*

The Government conduct at issue in this case involves prison documents entitled "Specific Post Orders For Recreational Patrol" (*See* Docket No. 24, Exhibit 2). More particularly, it involves two orders contained in those documents. First, the post order stating that "[i]nmates should not be allowed to gather in large groups" (Docket No. 24, Exhibit 2, page 5); and second, the post order stating that "[d]uring closed movement, you will patrol the recreation yard" (Docket No. 24, Exhibit 2, page 1). The post orders also evidence that movement was closed –meaning a guard should have been patrolling– from 6:05 pm until 7:55 pm, with only a 10 minute open period –meaning no patrol was required by post orders– between 6:55 pm and 7:05 pm (Docket No. 24, Exhibit 2, page 2).

The attack on the Plaintiff appears to have occurred at approximately 7:10 pm, and according to Plaintiff, a group of approximately seventy inmates had gathered during the 45 minute period leading up to the attack. During that time period, Plaintiff alleges no guards patrolled the recreation yard, as was required by post orders –at least during the large majority of time leading up to the attack. Furthermore, according to the Plaintiff, the guard allowed a large group to gather, in contravention of post orders. Thus, Plaintiff alleges that the guard failed to comply with two "Specific Post Orders." The court now turns to examine the nature of those two orders to determine whether or not the discretionary function applies.

A. <u>Post Orders and the Discretionary Function Exception</u>

We first look to the post order pertaining to gatherings of large groups. As noted earlier, the specific language of the order reads, "Inmates should not be allowed to gather in large groups" (Docket No. 24, Exhibit 2, page 5). According to *Berkovitz*, the first stage of analysis in these types of cases involves determining whether the targeted action is a matter of choice for the

acting employee; if, however, there is a statutory, procedural or policy directive dictating the employee's conduct, then the inquiry ends and the discretionary function exception does not apply. *Grinnell Corp.*, 280 F.3d at 571 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954).

The order at issue is contained in a document entitled "Specific Post Orders For Recreational Patrol," which includes a detailed schedule and description of the duties and activities of guards assigned to recreational patrol. The title of the document itself suggests that the instructions contained therein are both "specific" and "orders" and that therefore, by definition, they are directive. In other words, the guard on duty had no choice but to keep inmates from gathering in large groups. She was under "specific post orders" that dictated a course of conduct –not allowing large groups to gather– and thus the discretionary function exception does not apply. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954; *Gaubert*, 499 U.S at 322, 111 S.Ct. at 1273; *Grinnell Corp.*, 280 F.3d at 571.

The Government argues that the order does involve judgment because by not indicating what constitutes a "large group" the order allows the guard some discretion in determining what does or does not amount to an improper gathering of inmates. Ultimately, though it must be conceded that there is some element of judgment involved, this Court is of the opinion that any discretion, judgment, or choice manifested in the post order is not of the type intended to be protected by the discretionary function exception. *See Grinnell Corp.*, 280 F.3d at 572.

As a practical matter, every action by a government agent can be interpreted as involving some amount of discretion. If the word "discretionary" were construed broadly, it would nullify the goal of the FTCA. *See Irwin*, 916 F.2d at 1053. For example, as a judge of this court has observed, a groundskeeper's work could be deemed discretionary due to the fact that "grass could be mowed east to west or in a spiral." *Pulaski*, 212 F.Supp.2d at 656. The Court deems any discretion involved in the post order at issue to be not "grounded in regulatory policy," and thus not protected by the discretionary function exception. *Gaubert*, 499 U.S. 315, 111 S.Ct. at 1275 n.7.

12

For the same reasons noted above regarding the first post order, the second post order at issue in this case –which states that "During closed movement, you will patrol the recreation yard" (Docket No. 24, Exhibit 2, page 1)– is likewise not subject to the discretionary function exception. According to the order, guards assigned to the recreation yard have no option but to patrol during certain time periods; to state the matter crudely, the guards cannot not patrol the yard during closed movement. Thus, the "specific post order" –which is part of a written policy– was a directive dictating the employee's conduct. *Grinnell Corp.*, 280 F.3d at 571 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954). Again, though there may be some discretion involved –just as there is in every act by a government agent– it is not of the type intended to be protected by the discretionary function exception. *See Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959; *Grinnell Corp.*, 280 F.3d at 572.

The Government's position seems to be that any actions by prison employees relating to security –indeed, any acts relating to prison administration in general– should be protected by the discretionary function exception. Although this assertion is never explicitly stated, the Government's arguments have the same practical effect. For example, the Government, asserts that all prison staff members are considered to be correctional officers first, and only then are they to be considered secretaries, teachers, or whatever else their respective job titles might be. If this assertion is taken as true, and if we adopt the Government's position that prison employee's should be afforded discretion in performing their jobs because of the general nature of prison administration, the practical effect would be insulating almost all conceivable conduct of prison employees from tort liability. Such a result is precisely what the Supreme Court warned us of in *Berkovitz* when it cautioned that the discretionary function exception **does not** preclude liability for "any and all acts arising out of the regulatory programs of federal agencies." *Berkovitz,* 486 U.S. at 538, 108 S.Ct. 1959-60.

This is not to say that no aspect of prison administration involves the exercise of a discretionary function. Indeed, as the government point out, the scenario found in *Buchanan v.*

13

*United States,* 915 F.2d 969 (5th Cir. 1990), provides a perfect example of the application of the discretionary function to the prison setting. *Buchanan* involved an FTCA suit brought by inmates resulting from the 1987 Cuban National riots at the Federal Correction Facility in Oakdale, Louisiana. In affirming the United States' entitlement to dismissal under the discretionary function exception, the Court noted that "no statute, regulation, or policy does, or indeed could, specifically prescribe a course of action for prison officials to follow in every prison uprising." *Id.* at 971.

Although the Government argues that the case at hand is analogous to *Buchanan*, there is one glaring factual difference of great significance. The *Buchanan* case involved the actions and decisions of prison administrators during an emergency situation; minute to minute decisions were necessary in order to quell an "already volatile situation." *Id.* at 970. The actions at issue in the case at hand *preceded* an emergency situation. In fact, they were actions –post orders– that were specifically implemented to prevent situations such as the one that developed in the *Buchanan* case. They are not of the type that involve discretion and policy judgments –though conceivably a situation could have, or perhaps did, occur at a later point in the case at hand which called for the exercise of discretionary functions by prison officials.

The policy decisions relevant to this case were made at a "higher" level of administration when it was determined that, for whatever reason, inmates should be prevented from gathering into "large groups," and that it was necessary to patrol the recreational yard during closed movement periods. The decisions regarding whether or not to allow large groups to gather and whether or not patrolling was necessary were policy based actions involving judgment and choice; thus, it is likely that said decisions would rightly be protected by the discretionary function exception. However, when those policies were implemented in the form of specific post orders directing the guards not to allow large groups to gather and directing the guards to patrol during closed periods, they were removed from the protection of the discretionary function

14

exception. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954; *Gaubert,* 499 U.S at 322, 111 S.Ct. at 1273; *Grinnell Corp.,* 280 F.3d at 571.

As described above, the discretionary decisions that were made in this case had to do with whether or not allowing large groups of inmates to gather and whether or not patrolling were desirable from a policy standpoint. Those decisions were made by prison administrators and then implemented in the form of specific post orders. Once the discretionary decisions were made, the guards took on what might be described as an "operational function." *See Denham v. United States,* 834 F.2d 518, 520 (5th Cir. 1987). The guards performance –or failure to perform– when under specific post orders was an exercise of an operational function for which the United States can be held liable under the FTCA. *Id.*; *see also Butler v. United States,* 726 F.2d 1057 (5th Cir. 1984) (holding that once the critical discretionary decision is made, the government is required to perform operational functions with reasonable care).

As perhaps may now be obvious, the boundaries and limits of the discretionary function are far from clear. *See Varig Airlines,* 467 U.S. at 813; *FDIC v. Irwin,* 916 F.2d 1051, 1053 (5th Cir.1990); *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). The ultimate question, as stated by the Supreme Court, is "whether the challenged acts . . . are of the nature and quality that Congress intended to shield from tort liability." *Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764. The actions that allegedly led to Plaintiff's injuries were not such acts. *See Denham,* 834 F.2d at 521. This Court does not believe Congress intended that an individual who was injured because of the –alleged– negligence of a government employee who –allegedly– failed to follow specific orders should have no legal remedy. *Id.*; *see also Denham,* 834 F.2d at 521. Accordingly, this Court finds that the discretionary function does not apply.

B. <u>Legal Standards Applied</u>

The central tenet of the motion herein being considered (Docket No. 18) is that the discretionary function exception applies to the case at hand, and that resultantly this Court lacks subject matter jurisdiction to entertain Plaintiff's claims (Docket No. 19, pg 1). As the above

discussion makes clear, the Court has determined that the discretionary function exception does not apply. This determination would seem to effectively deal with each of the various prongs of attack raised in the Government's motion –*i.e.*, the 12(b)(1) motion, the 12(b)(2) motion, and the Rule 56 motion. However, for the sake of clarity the Court will address the various prongs of the Government's attack according to their respective legal standards.

Firstly, with regard to the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, according to *Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990), the Court's determination that the discretionary function exception does not apply may itself suffice for disposing of the 12(b)(1) motion. *See id.* (holding that if the government's conduct is determined to fall within the discretionary function exception to the FTCA, then the district court properly dismissed the case for lack of subject matter jurisdiction). Stated in terms of the applicable legal standard, because the discretionary function does not apply, it appears from the face of the pleadings that it is possible Plaintiff can prove a set of facts in support of his claim which would entitle him to relief. *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot and Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n. 8 (5th Cir.2000)("[T]he central issue [in reviewing a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."). Accordingly, the portion of Defendant's motion to dismiss based on Rule 12(b)(1) should be DENIED.

Secondly, regarding the 12(b)(6) motion to dismiss for failure to state a claim, the motion should be denied for the same reasons the 12(b)(1) motion should be denied. *See Bombardier Aerospace Employee Welfare Benefits Plan*, 354 F.3d at 351. The Court specifically notes that, in reaching this determination, it has not relied on any materials other than those it is allowed to consider when taking such motions under advisement. *See Lovelace*, 78 F.3d at 1017 (5th Cir. 1996). Having determined that subject matter jurisdiction exists based on the non-applicability of the discretionary function exception, the Court is of the opinion that, viewing the allegations in

the plaintiff's complaint in the light most favorable to him and drawing all reasonable inferences in his favor, it **does not** appear certain that the plaintiff will be unable to prove any set of facts in support of his claim which would entitle him to relief. *Adolph v. Federal Emergency Management Agency*, 854 F.2d 732, 735 (5th Cir.1988); *Kaiser v. Aluminum & Chem Sales, Inc. v. Avondale Shipyard, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105 (1983). In other words, because the discretionary function exception does not apply, the action at hand is not fatally flawed in its legal premises, nor is it necessarily destined to fail; accordingly, the portion of Defendant's motion to dismiss based on Rule 12(b)(6) should be DENIED. *Spivey*, 197 F.3d at 774.

Lastly, with regard to the Government's alternative motion for summary judgment, the evidence before the Court does not demonstrate that the standard for summary judgment set forth in Rule 56(c) has been satisfied. *Edwards v. Aguillard*, 482 U.S. 578, 595 n.16 (1987); *Celotex Corp.*, 477 U.S. at 325. As noted earlier, procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. The only issue raised by the Government's motion is the applicability of the discretionary function exception, which is a question of law. *See Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990). As noted earlier, the issue raised in the motion herein being considered is jurisdictional in nature. The Court is convinced that the Plaintiff has satisfied his burden of establishing that jurisdiction

exists, and that, therefore, the Rule 56 attack must fail.[2] Accordingly, the Court recommends that the portion of the Defendant's motion relating to Rule 56 be DENIED.

## RECOMMENDATION

For the reasons set out above, this Court RECOMMENDS that the Government's Motion to Dismiss and Alternative Motion for Summary Judgment (Docket No. 18) be DENIED in its entirety.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

DONE at Brownsville, Texas, this 20th day of February, 2004.

Felix Recio
United States Magistrate Judge

---

[2] To the extent that the Government seeks to challenge other aspects of the Plaintiff's case with its Rule 56 motion –*i.e.*, matters other than the applicability of the discretionary function exception– the Court believes such a challenge must fail at this time because the only issue raised in the Government's motion is the applicability of the discretionary function exception. The moving party did not inform the court of any other basis for its motion, nor did it identify what it believes demonstrates the absence of a genuine issue of material fact in regard to any issues other than the applicability of the discretionary function exception. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LUIS ALEJANDRO GARZA,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. B-02-154 |
| | § | |
| UNITED STATES OF AMERICA,<br>Defendant. | §<br>§<br>§ | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Magistrate Judge's Report and Recommendation in the above-referenced cause of action. After a de novo review of the file, the Magistrate Judge's Report and Recommendation is hereby ADOPTED. Accordingly, the Government's Motion to Dismiss and Alternative Motion for Summary Judgment (Docket No. 18) is DENIED.

DONE at Brownsville, Texas this _____ day of _____, 2004.

_____
Hilda Tagle
United States District Judge