35

United States District Court
Southern District of Texas
FILED

MAR 0 1 2004

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

LUIS ALEJANDRO GARZA,          *
    Plaintiff,          *
              *
v.          *          Civil Action No. B-02-154
              *
UNITED STATES OF AMERICA,          *
    Defendant.          *

### DEFENDANT'S OBJECTIONS TO
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, United Stated States of America, by and through Michael T. Shelby, United States Attorney for the Southern District of Texas, respectfully objects to the findings and conclusions set forth in "Magistrate Judge's Report and Recommendation" filed on February 20, 2004.

The United States submits that the Magistrate Judge incorrectly concluded that the "discretionary function exception" did not apply in this case; therefore, his recommendation that the "Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment" be denied should be overruled or otherwise set aside. In support of its objections to the Magistrate Judge's Report and Recommendation, the United States submits the following for consideration by this Court:

1.  *The Discretionary Function Exception*

The United States, as a sovereign, is immune from suit unless it consents to be sued. See FDIC V. Meyer, 510 U.S. 471, 476, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994); United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.ED.2d 607 (1980); and McNeily v. United States, 6 F.3d 343, 347 (5th 1993). The Federal Tort Claims Act (FTCA) represents one instance in which the United States has consented to be sued. See 28 U.S.C. § § 1346(b), 2679(a); United States v. Smith, 499 U.S. 160, 161-62, 111, S.Ct. 1180, 1182, 113 L.ED.2d 134 (1991).

Through the FTCA, Congress granted its consent to sue the United States for any "negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...". 28 U.S.C. §1346(b). In granting this waiver of sovereign immunity, Congress has also delineated a number of exceptions to it. 28 U.S.C. §2680. Because the FTCA is a limited waiver of sovereign immunity that must be strictly construed in favor of the government, the exceptions to this limited waiver of sovereign immunity must also be "strictly construed" in favor of the government. Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994) (citing Atorie Air, Inc. v. Federal Aviation Administration, 942 F. 2d 954, 958 [5th Cir. 1991]).

One such exception is the "discretionary function exception". Congress specifically withheld its consent to sue the United States  for:

> *any claim based upon an act or omission of an*
> *employee of the Government . . . based*
> *upon the exercise or performance or the failure*
> *to exercise or perform a discretionary function or duty*
> *on the part of a federal agency or an employee of the*
> *Government, whether or not the discretion involved*
> *be abused.*

See 28 U.S.C. §2680(a).  By way of this exception, "Congress has specifically excluded liability for claims based upon acts or omissions of a governmental agency in the exercise of a discretionary function." Jet Industries, Inc. v. United States, 777 F.2d 303, 305 (5th Cir. 1985). Accordingly, when applied, the discretionary function exception removes subject matter jurisdiction from the court. Id.; see also, Baldassaro v. United States, 64 F. 3d 206, 207 (5th Cir. 1995); ALX El Dorado, Inc. v. Southwest Savings and Loan Assn./F.S.L.I.C. 36 F. 3d 409, 410 (5th Cir. 1994); and, Buchanan v. United States, 915 F.2d 969, 970 (5th Cir. 1990).

In United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984),  the Supreme Court stated that the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure

to suit by private individuals." <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808 (1984). Accordingly, the Court recognized that Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." <u>Varig Airlines</u>, 467 U.S. at 814.

In <u>United States v. Gaubert</u>, 499 U.S. 315 (1991), the Supreme Court continued to emphasize that one purpose of the discretionary function exception was to "'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" <u>Gaubert</u>, 499 U.S. at 323, *quoting* <u>Varig Airlines</u>, 467 U.S. at 814.

In <u>*Gaubert*</u>, however, the Court also described a two-part test to determine whether the discretionary function defense should apply. First, a court should consider the nature of the conduct and determine whether it involves "'an element of judgment or choice'." <u>United States v. Gaubert</u>, 499 U.S. 315, 322, 328 (1991) *quoting* from <u>Berkovitz v. United States</u>, 486 U.S. 531, 536 (1988). If the government conduct in question does *not* involve "an element of judgment or choice", the discretionary function exception would *not* apply. <u>Id</u>. For example, "if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow'", the requirement of judgment or choice is not satisfied "because 'the employee has no rightful option but to adhere to the directive.'" <u>*Id.*</u>

Once the United States establishes that the act or conduct in question involved judgement or choice, <u>Gaubert</u> instructs us to go to the second part of the test and determine "whether [the actions] are susceptible to policy analysis." <u>Gaubert</u>, 499 U.S. at 325. Hence, the court must focus on "the nature of the conduct, rather than the status of the actor." <u>Varig Airlines</u>, 467 U.S. at 813; see also, <u>Buchanan v. United States</u>, 915 F.2d 969, 971 (1990).

The discretionary function exception has been applied in a number of cases where the United States has been accused of failing to protect its prisoners from the acts of other prisoners. For example, in <u>Cohen v. United States</u>, 151 F.3d 1338 (11th Cir. 1998), the

plaintiff - a "low security" federal inmate - was severely beaten by a fellow inmate who was allegedly classified as a higher security risk due to an extensive criminal history. The Plaintiff argued-unsuccessfully-that discretionary function did not apply in his case because 18 U.S.C. §4042 provided "'[t]he Bureau of Prisons, under the direction of the Attorney General, shall...provide for the safekeeping, care, and protection....of all persons charged with or convicted of offenses against the United States.'" Cohen, 151 F. 3d at 1341. The Court concluded that the language "shall protect" did *not* mean "that the regulation 'left no room'" for the government "'to exercise judgment or choice'" about how to fulfill that duty. Cohen, 151 F.3d at 1342, *quoting* Ochran v. United States, 117 F. 3d 495, 500 (11th Cir. 1997).

In making its ruling, the Cohen court looked to the Seventh Circuit opinion in Calderon v. United States, 123 F.3d 947 (7th Cir. 1997). In Calderon, the plaintiff-a federal prison inmate-received threats from other inmates. The plaintiff reported these threats to prison officials. Thereafter, the Plaintiff was assaulted. He filed his suit and claimed that prison officials took no steps to protect him or discipline the offending inmates. In Calderon, the Court reasoned that while 18 U.S.C. §4042 set forth a "mandatory duty of care" it did not "direct the *manner* by which the Bureau of Prisons must fulfill this duty." Calderon, 123 F. 3d at 950.

Likewise, in Santana-Rosa v. United States, 335 F. 3d 39 (1st Cir. 2003), the First Circuit concluded that the discretionary function exception applied in a case where the plaintiff/inmate was assaulted in the prison recreation yard. In its analysis, the Court noted:

> *The Management of large numbers of potentially dangerous individuals within a penal facility inevitably requires not only the exercise of discretion but decision-making within the context of various difficult policy choices. In many, if not most, instances where an inmate is unfortunately injured by another inmate, it will be possible to argue that a different exercise of discretion or a different policy choice might well have forestalled the injury. Nevertheless decisions with regard to classification of prisoners...and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have the flexibility to operate.*

<u>Santana-Rosa v. United States</u>, 335 F. 3d at 44.

In the case at bar, after being convicted and sentenced to two concurrent terms of imprisonment (324 months each) for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine, Plaintiff was confined at the United States Federal Correctional Institution (FCI) located at Three Rivers, Texas. On February 6, 2001, at approximately 7:06 p.m., there was a disturbance at the recreation yard of the FCI, Three Rivers. During the course of this disturbance, the plaintiff and three other inmates, Felipe Castro-Ontiveros, Jesus Martinez-Orosco, and Jose Jaime sustained injuries. The disturbance involved several inmates with rival gang affiliations. See Defendant's Exhibit 1[1], pp. 002 and 015. Numerous staff members from throughout the institution responded to the disturbance, two of which were on duty at the recreation yard when the disturbance began. See Defendant's Exhibit 1, pp. 009, 010, 016 - 024. Plaintiff argues that the discretionary function exception does not apply because "the guard at the recreation yard [failed to] follow specific post orders pertaining to patrolling and supervising and prohibiting the gathering of inmates into large groups." Plaintiff's First Amended Complaint, pp. 3-4. Plaintiff argues that the post orders in place at the time of the incident removed all discretion from the "guards" or other prison personnel in performing their duties.

Failing to properly apply the two part test described in <u>Gaubert</u>, the Magistrate Judge incorrectly agreed.

2.    <u>*The Magistrate Judge Incorrectly Concluded that Post Orders at FCI, Three Rivers, Texas Are Mandatory Directives*</u>.

In the case at bar, the Magistrate Judge incorrectly concludes that post orders issued by officials at the Federal Correctional Institution located at Three Rivers, Texas, deprived its employees of any ability to exercise judgement and discretion in how they were to patrol the recreation yard and supervise the inmates on the recreation yard.

---

[1]Defendant's Exhibit 1 is a copy of an Incident Report prepared as a result of the February 6, 2001 incident at issue in the Plaintiff's Complaint. Information reflecting an individual's known or suspected gang affiliation has been withheld in an effort to protect these individuals from possible reprisals due to known or suspected gang affiliations.

The Magistrate Judge asserts that the post orders at issue were "directive" in nature because they contained in their titles the words "specific" and "orders". See Magistrate Judge's Report and Recommendation, p. 12. However, the post-orders in this case also carry with them the statement:

> These post orders are issued as a **guideline** for the officers assigned to this post, and are not intended to describe in detail all of the officers [sic] responsibilities. **Good judgment and initiative are expected in all situations.** (Emphasis added)

See Plaintiff's Exhibit 2, pages 3 and 12. Overlooking this provision, the Magistrate Judge concludes that these post orders are "directives" of a nondiscretionary type because they include "a detailed schedule and description of duties and activities of guards assigned to the recreational patrol." Id.

While the appearance of a "detailed" schedule and description of duties carry an aura of command or authority, such seemingly mandatory language is often deemed irrelevant if additional language renders the directive either inapplicable or discretionary in its implementation. See, Lockett v. United States, 938 F. 2d 630,636 (6th Cir. 1991).

In general, the court should analyze these post orders according to the extent of binding effect intended and imposed by the policy directive. Aragon v. United States, 146 F.3d 819, 824-825 (10th Cir. 1998) (Air Force Manual "intended for guidance"); Fanoele v. United States, 975 F. Supp. 1394 (D. Kan. 1997) (GSA handbook was simply a guide for building design and not a mandatory directive); Big Owl v. United States, 961 F. Supp. 1304 (D.S.D. 1997) (provisions of a staff handbook did not rise to a level of federal authority necessary to constitute a mandatory directive).

In the case at bar, the post orders are meant to act as a guidance tool; the post orders clearly put the prison employee on notice that the post order is a "guideline" and that "[g]ood judgment and initiative are expected in all situations." Plaintiff's Exhibit 2, pages 3 and 12. (Emphasis added); See also, Declaration of Daryl Maune, Chief Correctional Supervisor, FCI, Three Rivers, attached hereto Defendant's Exhibit "3" (Defendant's Exhibits 1 and 2 are attached to its supporting brief filed herein on September 5, 2003).

One post order statement Plaintiff points to is: "[i]nmates *should* not be allowed to gather in large groups." (Emphasis added). In his analysis of this phrase, however, the Magistrate Judge seems to completely sidestep the use of the words "should not". The courts have found that the use of the word "may" or "should" are indicative of discretion. See, Fortney v. United States, 714 F. Supp. 207 (W.D. Va. 1989), aff'd 912 F.2d 722 (4th Cir. 1990) and Dube v. Pittsburgh Corning, 870 F.2d 790 (1st Cir. 1989). This post order could have used the words "must not" or "shall not", but it didn't. This post order could have defined the word "large (i.e. no more than ten inmates), but it didn't. As pointed out by Daryl Maune, Chief Correctional Supervisor, FCI, Three Rivers, "[t]he Recreational Yard is a large complex with numerous simultaneous activities, including indoor and outdoor basketball, hobby craft, music, bocci ball, art, soccer, weightlifting, indoor and outdoor aerobic equipment, horseshoes, handball, table games and track" See, Defendant's Exhibit "3" attached hereto. In such an environment, the post orders cannot be read as "inflexible absolutes" but rather as a guidance tool to assist the personnel in doing their job. Id.

The Plaintiff and the Magistrate Judge also focus on that part of the post order that says "during closed movement, you will patrol the recreation yard". Magistrate Judge's Report and Recommendation, page 11. Again, the Magistrate Judge fails to consider the post order in its entirety. Page 3 of that post order (i.e. Defendant's Exhibit 2, page 3) clearly reassures the Recreation Patrol officer that he or she is to use their best judgment in performing their duty *"in all situations*." Plaintiff's Exhibit 2, pages 3 and 12.

As the Magistrate Judge points out, the incident at issue happened during or right at the end of an "open movement"[2]. Recreation Officer Romero was "at the metal detector monitoring inmate traffic entering/exiting the recreation yard during the open compound".

---

[2]A time of day where mass inmate movement throughout the facility takes place. See Defendant's Exhibit 3.

Defendant's Exhibit 1, p. 23[3].    Recreational Specialist, W. Martin, had just finished securing the gate when he first observed inmates running from the recreation yard patio are. Defendant's Exhibit 1, pp. 009 and 016. As pointed out by Allen Beard, the Captain at FCI, Three Rivers facility in February 2001, "the management of inmates requires flexibility on the part of the staff." By telling its officers that the post order is intended as a "guideline" and to exercise "good judgment and initiative" in "all situations", the Bureau of Prisons is giving its staff the discretion fulfill their duty to "preserve internal order and discipline and to maintain institutional security" while balancing that security with the need to provide inmates with social/recreational outlets. See, Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); see also, Defendant's Exhibit "3" (wherein FCI, Three Rivers, Correctional Supervisor, Daryl Maune, states that "[t]he Bureau of Prisons intends for the Specific Post Orders for Recreation Patrol, like all post orders, to be read in their entirety as guidelines or recommendations...").

Finally, at page 15 of the Magistrate Judge's Report and Recommendation, it appears that the Magistrate Judge applied the outdated "Planning/Operational Test" standard in this case. At page 15 of his Report and Recommendation, the Magistrate Judge states:

> ...the discretionary decisions that were made in this case had to do with whether or not allowing large groups of inmates to gather and whether or not patrolling were desirable from a policy standpoint. Those decisions were made by prison administrators and then implemented in the form of specific post orders. Once the discretionary decisions were made, the guards took on what might be describes as an "operational function." See Denham v. United States, 834 F.2d 518, 520 (5th Cir. 1987) The guards performance-or failure to perform-when under specific post orders was an exercise of an operational function for which the United State can be held liable under the FTCA. Id; see also, Butler v. United States, 726 F. 2d 1057 (5th Cir. 1984).....

The Supreme Court in Gaubert found that "discretionary conduct is not confined to the policy or planning level." United States v. Gaubert, 499 U.S. 315, 326 (1991).

---

[3]Plaintiff's Exhibit 1, page 2, also confirms that Recreation Officer Romero was at the gate to the recreation yard at the time the incident occurred.

Accordingly, any suggestion that the discretionary acts of lower level officials at the FCI, Three Rivers would not excepted from the FTCA are not supported by current case law.

3.    *Conclusion and Prayer*

The actions taken-or not taken- by prison officials in this case clearly fall within the discretionary function exception to the FTCA. Even if this court were to find an abuse of discretionary, it has no choice but to grant the United States' motion in this case. Accordingly, this Court should *not* adopt the  Magistrate Judge's Report and Recommendation and should issue an order dismissing the case for want of subject matter jurisdiction. Alternatively, this Court should render judgment in favor of the United States.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

NANCY L. MASSO
Assistant U.S. Attorney
600 E. Harrison, #201
Brownsville, TX 78520
Tel:    (956) 548-2554
Fax:    (956) 548-2549
Texas State Bar No. 00800490
Federal I.D. No. 10263

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing "Defendant's Objections to Magistrate Judge's Report and Recommendation" was mailed on this the 1st day of March, 2004 via Certified Mail, Return Receipt Requested to Barry R. Benton, Attorney at Law, 284 Ebony Avenue, Brownsville, TX 78520.

NANCY L. MASSO
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

LUIS ALEJANDRO GARZA,　　　　　S
　　　　　　　　　　　　　　　　　S
PLAINTIFF,　　　　　　　　　　　S
　　V.　　　　　　　　　　　　　S  CIVIL NO. CA-B-02-154
UNITED STATES OF AMERICA,　　　S
　　　　　　　　　　　　　　　　　S
DEFENDANT.　　　　　　　　　　　S

## DECLARATION OF DARYL MAUNE

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, the

undersigned Daryl Maune, do hereby make the following unsworn declaration, under penalty of

perjury, pertinent to the above-styled and numbered cause:

I, Daryl Maune, am employed by the Bureau of Prisons (BOP) as Chief Correctional

Supervisor, or Captain, at the Federal Correctional Institution, Three Rivers, Texas. I have been

employed by the BOP for 19 years, always in Correctional Services, where I worked my way up

through the ranks as from Correctional Officer to Senior Officer, to Senior Officer Specialist, to

Lieutenant, and now to Captain. Throughout my BOP employment, I have received training in

many topics. Much of that training centered upon supervision, custody, and control of inmates. I

received more advanced training in those areas upon my promotion to Lieutenant, and then to

Captain. Conversely, I have given training on a number of occasions, and am very familiar

with the manner in which the Bureau of Prisons manages inmate populations. I understand

that the plaintiff in this suit was assaulted by other inmates on the Recreation Yard at FCI,



Three Rivers, on 6 February 2001. I was not employed at FCI, Three Rivers at that time; rather, I was assigned there at a later date.

The Bureau of Prisons intends for the Specific Post Orders for Recreation Patrol, like all post orders, to be read in their entirety as guidelines or recommendations, not as inflexible absolutes, and staff are trained in that approach. I understand that the Specific Post Orders for Recreation Patrol in effect on 6 February 2001 state that "(d)uring closed movement, you will patrol the recreation yard." That statement is to be read in conjunction with the statement in the previous paragraph that "(d)uring mass inmate movements, you will ensure all inmates pass through the metal detector." Those statements together convey the understanding that the Recreation Patrol's duties, during the 10 minutes out of every hour that mass inmate movements are conducted, are different from the Recreation Patrol's duties during the remaining 50 minutes, known as closed movement. During inmate movements, which is the time that inmates are allowed to move about the institution, including entering and leaving the Recreation Yard, the Recreation Patrol is expected to man the metal detector separating the Recreation Yard from the rest of the institution to prevent the possible flow of contraband. During closed movement, the phrase "you will patrol the recreation yard" means that the Recreation Patrol is to move about the Recreation Yard, keeping track of activities there.

I further understand that the Specific Post Orders for Recreation Patrol which were in effect on 6 February 2001 state that "(i)nmates should not be allowed to gather in large groups." The Recreation Yard is a large complex with numerous simultaneous activities, including indoor and outdoor basketball, hobbycraft, music practice, bocci ball, art, soccer, weightlifting, indoor and outdoor aerobic equipment, horseshoes, handball, table games, and

-2-

track. It is unrealistic to expect that the recreation patrol could at all times prevent inmates from forming groups, especially, in areas not visible at a given moment to the recreation patrol. Furthermore, immediately before and during inmate mass movements, inmates line up at the metal detector in order to enter and exit the Recreation Yard. In the course of lining up, they necessarily form groups. Thus, the phrase "(i)nmates should not be allowed to gather in large groups" is to be read as a guideline or recommendation, not an absolute prohibition.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of February, 2004.

Daryl Mauhe
Chief Correctional Supervisor
Federal Correctional Institution
P.O. Box 4000
Three Rivers, Texas 78071