IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

OCT 1 3 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk

LUIS ALEJANDRO GARZA,                    §
                                         §
                    Plaintiff,           §
                                         §
v.                                       §          CIVIL NO. B-02-154
                                         §
UNITED STATES OF AMERICA,                §
                                         §
                    Defendant.           §

## FINAL JUDGMENT

BE IT REMEMBERED that on October 12, 2004, the Court, having rendered a summary judgment decision in favor of Defendant on all claims, enters final judgment pursuant to Federal Rule of Civil Procedure 58.

DONE this 12th day of October, 2004 at Brownsville, Texas.

_____
Hilda G. Tagle
United States District Judge

1

United States District Court
Southern District of Texas
FILED

SEP 2 8 2004

Michael N. Milby
Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

LUIS ALEJANDRO GARZA,          §
Plaintiff,                     §
                               §
                               §
v.                             §          CIVIL ACTION NO. B-02-154
                               §
                               §
UNITED STATES OF AMERICA,      §
Defendant.                     §

## ORDER

BE IT REMEMBERED that on September 28, 2004, the Court considered Defendant's timely objections to the Magistrate Judge's Report and Recommendation ("R&R"). For the reasons that follow, the Court **DECLINES to adopt** the Magistrate Judge's Report and Recommendation, and **DISMISSES** Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction over the subject matter.

### I. Standard of Review of Magistrate Judge's Report and Recommendation

Plaintiff brings this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et. seq. After referral to a United States Magistrate Judge, this Court reviews *de novo* those portions of the R&R to which objection is made. "A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). Those portions of the R&R for which there are no objections the Court reviews for clearly erroneous findings and conclusions of law. *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). Before the Court is the Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment [Dkt. No. 18]. For the following reasons, this Court **GRANTS** the Defendant United States of America's Motion to Dismiss for lack of subject matter. The Court, therefore declines to adopt the Magistrate Judge's R&R.

1

## II. Factual and Procedural Background[1]

The Plaintiff, Luis Alejandro Garza, is serving two concurrent 324-month terms of imprisonment for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine. Although Plaintiff is presently incarcerated in the federal penitentiary in Pollock, Louisiana, the events leading to this lawsuit occurred while Plaintiff was a prisoner at the Federal Correctional Institution ("FCI") located in Three Rivers, Texas. On February 6, 2001, a group of inmates attacked the Plaintiff in a gang-related incident and, as both parties concede, severely beat Plaintiff causing him injury. Three other inmates also sustained injuries in the incident.

As a result of the above-described events, Garza filed the instant suit pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et. seq., alleging that the negligence of Bureau of Prison ("BOP") employees was the proximate cause of his injuries.

Subsequent to answering, the Defendant filed a Motion to Dismiss and Alternative Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56(b) [Docket No. 18]. Along with that motion, the Defendant filed a supporting brief with attached exhibits [Exs. 1 & 2, Dkt No. 19].

The Plaintiff, after being granted an extension of time to respond, filed a Motion for Leave to File First Amended Complaint [Dkt. Nos. 22 & 26], and a response to the Defendant's Motion to Dismiss [Dkt No. 24]. The Magistrate Judge granted leave to file the amended complaint. In his First Amended Complaint [Dkt No. 26, Ex. 1], Plaintiff re-urged his allegations of negligence with more specificity. In particular, Plaintiff argued in his amended complaint that the failure of the recreation yard guard to follow specific post orders concerning patrolling during "closed movement," supervising, and prohibiting large groups of inmates to gather was the proximate cause of his injuries.

---

[1]The Court repeats verbatim large portions of the Magistrate Judge's Report and Recommendation, and only modifies or fails to adopt those portions objected to by the Defendant.

The Magistrate Judge held a hearing on January 15, 2004, at which both parties argued their respective positions regarding the pending motions. Defendant argued that the discretionary function exception bars Plaintiff's suit against the government.

## III. Analysis

### A. Dismissal Standards

The only ground upon which the Defendant bases its Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), is on the operation of the discretionary function exception to this case. *See Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990) (determining that "[i]f the government's conduct falls within the discretionary function exception to the FTCA, then the district court properly dismissed the case for lack of subject matter jurisdiction [under Federal Rule of Civil Procedure 12(b)(1)]."); *see also* 28 U.S.C. § 2680(a). Under Rule 12(b)(1), a plaintiff's claim may be dismissed when the court lacks jurisdiction over the subject matter of that claim. *See* Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In particular, Rule 12(b)(1) authorizes the dismissal of a case for want of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Home Builders Association of Mississippi, Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). A district court may dismiss a case for want of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)). *See also Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001); *Kelly v. Syria Shell Petroleum Development*, 213 F.3d 841, 845 (5th Cir. 2000) (citations omitted); *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In deciding a Rule 12(b)(1) motion, the Court may consider and weigh factual evidence to determine whether jurisdiction is appropriate. *See MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 180-81 (5th Cir. 1992).

3

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 365 (5th Cir. 2000); *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247(5th Cir. 1997) (quoting *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). *See also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

Rule 12(b)(6) allows a court to eliminate actions that are fatally flawed in their legal premises and destined to fail, thus sparing the litigants the burdens of unnecessary pretrial and trial activity. *See Spivey, Jr., v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999). In ruling on a motion to dismiss, a court should consider only those facts stated on the face of the complaint or incorporated into the complaint by reference, and matters of which judicial notice may be taken. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996); *McNamara v. Bre-X Minerals Ltd.*, 57 F.Supp.2d 396, 417 n.12 (E.D.Tex.1999).

## B. Legal Standard: The Discretionary Function Exception

The FTCA generally authorizes suits against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or

4

omission occurred." 28 U.S.C. § 1346(b); *see also Berkovitz v. United States*, 486 U.S. 531, 535, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988).

The FTCA's broad waiver of sovereign immunity is subject to a number of exceptions; among them is the "discretionary function exception," which provides that no liability shall lie for:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

According to the Supreme Court, this exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S.Ct 2755, 2761-62, 81 L.Ed.2d 660 (1984). If the government conduct at issue is determined to fall within the discretionary function exception to the FTCA, then the case should be dismissed for lack of subject matter jurisdiction. *Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990); *see also* 28 U.S.C. § 2680(a).

As numerous courts have discovered when attempting to apply the discretionary function exception, the contours of the exception elude precise definition. *See Varig Airlines*, 467 U.S. at 813 (noting the impossibility of defining "with precision every contour of the discretionary function exception"); *FDIC v. Irwin*, 916 F.2d 1051, 1053 (5th Cir.1990) ( "decades of litigation have yet to yield a clear demarcation between actionable torts and immune discretion ... [i]mprecision appears inevitable.") (citation omitted). "It is unnecessary –and indeed impossible– to define with precision every contour of the discretionary function exception." *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764. Additionally, the FTCA does not define "discretionary function," which has resulted in extensive litigation over the meaning of the term. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir.1997). If the word "discretionary" were construed broadly, it would nullify the goal of the FTCA. *See id.*; *see also Pulaski v. Republic of India*, 212 F.Supp.2d 653, 656 (S.D. Tex. 2002) ("every act by every agent of a

5

government could involve some discretion; grass could be mowed east to west or in a spiral"). Thus, "the statutory language does not apply to every situation in which there is an actual option to choose between courses of action and inaction." *Gotha*, 115 F.3d at 179.

The United States Supreme Court has nevertheless provided guidance for determining whether the discretionary function exception bars a suit against the Government. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988). It has been stated that the nature of the conduct, and not the status of the actor, governs whether the exception applies. *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1272, 113 L.Ed.2d 335 (1991). Additionally, and despite the imprecision inherent in the concept, the United States Supreme Court has developed a two-part test to determine whether governmental conduct is immune from suit under the discretionary function exception. *See Gaubert*, 499 U.S. at 322; *Berkovitz*, 486 U.S. at 536; *Cazales v. Lecon, Inc.*, 994 F.Supp. 765, 771 (S.D. Tex. 1997).

The Supreme Court in *United States v. Gaubert*, clarified the proper analysis courts should use in discretionary function exception cases. 499 U.S. at 321. Namely, the Court held it is not proper to distinguish between "policy decisions," which would fall within the exception and "operational actions," which would not fall within the exception. *Id.* at 325. Thus, the Court ruled it was error to hold the exception does not apply to decisions made at the operational or management level. *Id.* "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions . . . . Discretionary conduct is not confined to the policy or planning level." *Id.* With this in mind, the Court must consider first whether the challenged conduct involves "'an element of judgment or choice'" for the acting employee. *Gaubert*, 499 U.S. at 322 (quoting *Berkowitz*, 486 U.S. at 536); *see also Dalehite v. United States*, 346 U.S. 15, 34, 73 S.Ct. 956, 967, 97 L.Ed. 1427 (1953) ("The exception protects the discretion of the executive or the administrator to act according to one's judgment of the best course."). Thus, the discretionary function exception will not apply when a federal statute, regulation, or policy specifically

6

prescribes a course of action for an employee to follow. *Berkowitz*, 486 U.S. at 536; *see also Gaubert*, 499 U.S. at 328. In such situations, the "employee has no rightful option but to adhere to the directive." *Berkowitz*, 486 U.S. at 536.; *see also Dalehite*, 346 U.S. at 36. Accordingly, in such a case there can be no discretionary act protected by the exception.

If the Court finds the challenged conduct involves an element of judgment or choice, the second step in the *Gaubert* analysis requires the Court to determine whether that judgment is of the kind that the discretionary function was designed to shield, *Berkowitz*, 486 U.S. at 536, and whether the actions "are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325. The Court must focus on the "nature of the conduct, rather than the status of the actor." *Varig Airlines*, 467 U.S. at 813. The basis for the discretionary function exception was Congress' desire to "'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Berkowitz*, 486 U.S. at 536 (citing *Varig Airlines*, 467 U.S. at 814, 104 S.Ct. at 2764-65); *see also Denham v. United States*, 834 F.2d 518, 521 (5th Cir. 1987). "The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy." *Id.* (citing *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968).

## IV. Parties' Arguments Presented to the Magistrate Judge

According to the Government, the discretionary function exception should apply to this case for two reasons. First, relying in large part on the case of *Buchanan v. United States*, 915 F.2d 969 (5th Cir. 1990), the Government argued the mandatory duty to provide for the protection of prisoners, pursuant to 18 U.S.C. § 4042, does not direct a specific manner by which the Bureau of Prisons must fulfill its duty. *See, e.g., Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998). Furthermore, according to the Government, because internal prison security requires officials to act quickly and use their best judgment, the acts of employees are by their nature discretionary and policy-based and thus fall under the discretionary function exception. *See generally Buchanan*, 915 F.2d 969.

7

More specifically, the Government argued the post orders relating to patrolling and prohibiting large groups of inmates to gather are general guidelines designed to allow BOP employees to tailor their responses to changing conditions and to exercise judgment concerning, for example, the number of inmates that may congregate at a specific time or in a particular place. The Government stated in its brief that prison employees, when performing security related duties, should have "minute to minute decision making" ability, which is an activity that requires discretion, and should not be "second guess[ed]" by a court. *See* Defendant's Brief, at . 8 [Dkt. No. 19] (citing *Buchanan*, 915 F.2d at 972).

The central tenet of Plaintiff's position, as stated in his First Amended Complaint, is that Officer Deborah Romero failed to follow specific post orders, which led directly to the attack and his injuries. According to Plaintiff, Romero was under specific post orders to patrol and supervise the recreation yard during "closed movement," and to prevent inmates from gathering into large groups in the recreation yard. Plaintiff argued that Officer Romero failed to follow these specific orders. Furthermore, Plaintiff argued the guard's actions relating to these orders do not fall under the discretionary function exception because the guard on duty had no discretion or choice concerning whether to patrol the yard, nor did she have discretion regarding whether to prevent a large group of inmates from gathering. Plaintiff contended that each specific post order prescribes a course of action for the guard to follow, and the guard had no option but to adhere to those directives. *See* Pl's Response to Defendant's Motion to Dismiss, at pp. 5-6 [Dkt. No. 24]; *see also Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958-59; *Commerce and Industry Ins. Co. v. Grinnell Corp.*, 280 F.3d 566, 571-72 (5th Cir. 2002) (discussing state law applied in same manner as discretionary function exception analyzed in *Berkovitz*). Thus, Plaintiff argued the Government action at issue does not fall under the discretionary function exception.

The Plaintiff alternatively argued that if the guard's actions in relation to the specific post orders are determined to involve an element of choice or judgment, then the discretionary function exception would still not apply because without the permissible exercise of policy judgment, the discretion involved is not of the type that

the exception was designed to protect. *See* Pl's Response, at pp. 6-7. Extending the discretionary function exception to the post orders at issue in this case would essentially mean that no action of any prison employee could be subject to tort liability. Plaintiff therefore asserted that the guard's decision whether or not to patrol the yard and whether 70 inmates constituted a large group are not decisions "grounded in regulatory policy," and thus are not protected by the discretionary function exception. *See generally United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 1275 n.7 (1991).

## V. Magistrate Judge's R&R and Defendant's Objections to the R&R

The Magistrate Judge found that the post orders at issue were specific and dictated a course of action—that is, the BOP officer would patrol during closed movement and would not allow large groups of inmates to gather. Recognizing that some element of judgment is involved in the officer's actions, the Magistrate Judge nevertheless determined the discretionary function exception did not apply to the facts of this case. For the reasons discussed below, the Court declines to adopt these findings.

Defendant's objections are straightforward, arguing the Magistrate Judge (1) incorrectly concluded "that post orders issued by officials at the Federal Correctional Institution located at Three Rivers, Texas, deprived its employees of any ability to exercise judgment and discretion in how they were to patrol the recreation yard and supervise the inmates on the recreation yard," and (2) "applied the outdated 'Planning/Operational Test' standard in this case.'" Def's Objections, at pp. 5-9 [Dkt. No. 35].

## VI. Analysis of Discretionary Function Exception

In Plaintiff's First Amended Complaint, he states:

> During the time in question the guard responsible for supervising inmates in the recreational yard was under specific post orders to patrol and supervise the recreation yard and to prevent inmates from gathering into large groups.

> In contravention of these orders, the guard was not patrolling the recreation yard or supervising the inmates. Over the period of about an hour approximately 70 inmates gathered in a group . . . .

9

Pl's First Amended Cmplt. ¶¶ 10 & 11 [Dkt. No. 26].  Additionally, the Plaintiff's First Amended Complaint contains a section entitled "Duty and Breach of Duty," in which he states his cause of action.

> Pursuant to 18 U.S.C. Section 4042 and the Eighth Amendment to the United States Constitution Defendant is obligated to keep Plaintiff safe and free from harm. The failure of the guard at the recreation yard to follow specific post orders pertaining to patrolling and supervising and prohibiting the gathering of inmates into large groups was a proximate cause of the assault on Plaintiff and the serious and permanent injuries he suffered.

*Id.* ¶ 12.

### A. Discretionary or Mandatory Conduct

The orders at issue in this case are contained in an internal procedural manual, and are entitled "Specific Post Orders For Recreational Patrol." *See* [Dkt No. 24, Ex. 2, p. 1].  The first post order contains a schedule, separated by time increments, with a detailed description of the duties and activities the guards assigned to recreational patrol should complete.  For example, the order states,

> 2:30 PM    Report for duty in the prescribed uniform and report to the operations Lieutenant.  Receive any pertinent information concerning the compound or your post.  Proceed to the Control Center and draw key ring C-51 and C-52, a pair of handcuffs, and a radio.  Proceed to the Metal Detector Station and conduct a test and inspection of the metal detector.
>
> *During closed movements, you will patrol the recreation yard.*

*Id.* (emphasis added).

At the time preceding and immediately after the events at issue in this case, approximately 7:06 p.m., the post order states,

> 6:05 PM    Inmate movement will cease at this time, [sic] Continue your assigned duties and begin making watch calls to the Control Center Officer, via telephone extension 333.

| 6:55 PM | Open movement commences.  Monitor inmate activities on the recreation yard. |
| 7:05 PM | Movement closed.  Monitor inmate activities on the recreation yard. |
| 7:55 PM | Open movement commences.  Process inmates entering and exiting the recreation yard through the metal detector. |

*Id.*  Without question, the "Specific Post Orders" did not prescribe the manner in which certain monitoring activities would take place.  But, the orders do use some language that would indicate an intent to mandate that during closed movement of the inmates, guards were required to patrol.  The Magistrate Judge found that the guard on duty at the time of the incidents, 7:06 p.m., would have had no choice but to patrol the recreation yard because from 7:05 through 7:55 p.m. the movement of the inmates was closed, and thus the orders required that guards patrol during this time.  The Magistrate Judge concluded the identified officer was under "specific post orders" that dictated a course of conduct –that is, to patrol–and thus the discretionary function exception does not apply. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954; *Gaubert,* 499 U.S at 322, 111 S.Ct. at 1273; *Grinnell Corp.,* 280 F.3d at 571.

The Government argues in its objection to the Magistrate Judge's opinion that the post orders also contain an additional statement that indicates discretion is encouraged and indeed required:

> Note:  These post orders are issued as a guideline for the officers assigned to this post, and are not intended to describe in detail all of the officers [sic] responsibilities.  Good judgment and initiative are expected in all situations.

Def's Objections, at p. 6 (citing Pl's Response, Ex. 2, at pp. 3 & 12).

The notation mentioned above is, in the opinion of this Court, fatal to Plaintiff's claim under the FTCA.  As the government asserts, manuals, as opposed to agency regulations, are not *necessarily* entitled to the force or effect of law.  *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam).  In this case, the post orders themselves contain language that expressly states the orders are issued only as guidelines and "are not *intended* to describe in detail all of the officers [sic] responsibilities."  Pl's Response, Ex. 2, at pp. 3 & 12.  Indeed, the notation

11

encourages employees to exercise judgment and discretion, and even initiative. Were this qualification absent from the post orders, the Court may view the post orders differently. *See Buford v. United States*, 1999 WL 319078, at *4 (Apr. 28, 1999 D. Kan.) (holding that BOP internal mandatory security directives explicitly prescribed certain security functions and thus officers' actions were not subject to the discretionary function exception). In the face of such a stated intent, the Court is loathe to rule the post orders are "prescribed mandatory directives" for the BOP employees to follow. *See, e.g., Aragon v. United States*, 146 F.3d 819, 825 (10th Cir. 1998) (holding that express qualification that manual is "intended for guidance" "weighs heavily against ruling that the Manual prescribed mandatory directives for the Air Force to follow in the context of the discretionary function exception to the FTCA). The post orders before the Court now were specific, but they were not mandatory, as evidenced by the notation actually contained in the post orders. *See, e.g., Fanoele v. United States*, 975 F. Supp. 1394, 1400 (D. Kan. 1997) (holding that even mandatory language, such as "shall," in a GSA handbook will not convert a manual or handbook into a directive when the overall scope of the language indicates actions are left to the "judgment of the government official"); *Big Owl v. United States*, 961 F. Supp. 1304, 1308-09 (D.S.D. 1997) (holding that Staff Handbook served as a guide to be followed and was not a mandatory directive, particularly when the provisions were not based in federal authority). Finally, the Government presents evidence that "the management of inmates requires flexibility on the part of the staff." Def's Motion to Dismiss, Ex. 1, at pp. 9-16; Ex. 3 ("The Bureau of Prisons intends for the Specific Post Orders for Recreation Patrol, like all post orders, to be read in their entirety as guidelines or recommendations . . . "). The provision discussed above and cited by Plaintiff is not a mandatory directive, and thus discretion and choice was left to the BOP officer to carry out security functions.

The Government similarly objects to the Magistrate Judge's finding that a second provision in the "Specific Post Orders" is also a mandatory directive and thus not barred by the discretionary function exception. The specific language of the post order states, "[i]nmates should not be allowed to gather in large groups." Pl's Response, Ex. 2, at p. 5 [Dkt. No. 24]. The Government argues that the order is not a directive, in part,

12

because it uses the term "should," instead of a mandatory term such as "will" or "shall." In addition, rather than specify the exact number of inmates that should not be allowed to gather, the order speaks in general terms, referencing "large groups." Furthermore, by not indicating what constitutes a "large group," the government argues the order allows the guard some discretion in determining what does or does not amount to an improper gathering of inmates.

Case law again directs the Court in the first stage of analysis to determine whether the targeted action is a matter of choice for the acting employee. *Gaubert*, 499 U.S. at 322 (citing *Berkowitz*, 486 U.S. at 536). If, however, there is a statutory, procedural or policy directive dictating the employee's conduct, then the inquiry ends and the discretionary function exception does not apply. *Grinnell Corp.*, 280 F.3d at 571 (quoting *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954).

The second post order states generally, "[a]s the Recreation Patrol Officer you are responsible for the supervision of inmates on the compound. Inmates *should not* be allowed to gather in large groups." Pl's Response, Ex. 2, p. 5. Because of the page breaks and numbering, it is unclear to the Court whether the second post order is a continuation of the first post order. Both orders, however, are entitled "Specific Post Orders for Recreation Patrol." Where the first post order was segmented by time intervals, the second post order encompasses broader objectives for the recreation patrol officer. The second post order outlines the responsibility of the officer for maintaining accountability of all inmates, supervising inmates "in whatever manner necessary," providing for the security of the institution, and responding to emergencies. The language used in the second post order is facially non-specific, using the term "large groups," and the command itself is not a mandatory directive because it uses the wording "should not," instead of "must not" or "will not." The Court cannot ignore the presence of such language.

Additionally, undergirding this analysis is the general instruction by the Supreme Court that "[p]rison administrators. . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v.*

13

*Albers*, 475 U.S. 312, 321-22, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (citing *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Defendant submitted evidence in which a Correctional Supervisor stated that BOP intends the "Specific Post Orders for Recreation Patrol, like all post orders, to be read in their entirety as guidelines or recommendations . . . " *See* Def's Objections, at p. 8 (quoting Def's Ex. 3, testimony of Daryl Maune).  The post orders at issue do not specify with sufficient precision the steps BOP officers must take concerning the congregating of "large groups," nor does it specify a number that would constitute a "large group" or contain language mandating that large groups *will not*, instead of *should not*, be allowed to gather.  As a result the Court concludes that the BOP officer's actions concerning the gathering of inmates was discretionary.  In making this determination the Court decides this case similarly to district and circuit courts in sister circuits.  *See, e.g., Santana-Rosa v. United States*, 335 F.3d 39, 44-45 (1ˢᵗ Cir. 2003) (holding discretionary function exception applied to situation where inmate was injured after an attack by a fellow inmate, and reasoning that "in many, if not most, instances where an inmate is unfortunately injured by another inmate, it will be possible to argue that a different exercise of discretion or a different policy choice might well have forestalled the injury."); *Cohen v. United States,* 151 F.3d 1338, 1343 (11ᵗʰ Cir. 1998) (holding discretionary function exception applied where inmate was injured in attack by fellow inmate because even when a statue, 18 U.S.C. § 4042, imposes a general duty on a government agency and uses language implying a mandatory duty, the relevant BOP guidelines granted sufficient discretion in fulfilling that duty); *Calderon v. United States*, 123 F.3d 947, 950 (7ᵗʰ Cir. 1997) (holding discretionary function exception applied to officers' decision not to separate prisoners where regulations cited did not set forth mandatory, non-discretionary disciplinary action).

In light of the above analysis and case law, the second post order does not qualify for the discretionary function exception.

**B. Policy Considerations**

The Court now turns to the second prong of analysis.

14

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert*, 499 U.S. at 324-25. Courts in sister circuits have acknowledged that certain acts that are obviously discretionary acts and are performed within a government agent's scope of employment are not intended to fall within the discretionary function exception because "'these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish.'" *Coulthurst v. United States*, 214 F.3d 106, 110 (2d Cir. 2000) (quoting *Gaubert*, 499 U.S. at 325 n.7). Examples that would fall into this category include negligently driving a car while on government duty, *Gaubert*, 499 U.S. at 325 n.7, and an inspector's laziness, which led him to take a smoke break rather than inspect a machine. *See id.* at 323. These kinds of actions do not reflect "considerations of public policy," and as such do not implicate the kind of considered judgment "grounded in social, economic, and political policy" intended to be shielded by the discretionary function exception. *See id.*; *Varig Airlines*, 467 U.S. at 814; *see also Coulthurst*, 214 F.3d at 111 (finding negligence where defendant failed to diligently and periodically inspect weight equipment and failed to replace cable after undue wear and tear in a correctional facility was not the kind of negligence intended to be shielded by the discretionary function exception). Similarly, the Sixth Circuit hypothesized that in a situation in which a "guard stood by while an inmate was chased and severely beaten by 12 other inmates" would likely be adequate to survive a motion to dismiss because "a guard's conscious decision not to protect an inmate from a specific and immediate attack cannot 'be said to be grounded in the policy of the regulatory regime.'" *Montez v. United States*, 359 F.3d 392, 398 (6th Cir. 2004) (quoting *Gaubert*, 499 U.S. at 325). Generally, therefore, as the Sixth Circuit has articulated the rule, decisions in which a non- specific threat to a prisoner, rather than decisions by prison officials who ignore

15

specific and immediate threats, are more likely to fall within the discretionary function exception because they are grounded in the underlying policy of BOP, which encourages officers to make discretionary decisions in prison security to respond to a myriad circumstances. *See id.* at 398 (citing 18 U.S.C. § 4042(a)).  In *Montez*, the Sixth Circuit held that "the sole fact that [the prisoner] was 'in protective lock-up prior to the attack' does not demonstrate the existence of a specific and immediate threat against [that same prisoner]," and thus the discretionary function exception applied.  *Id.*  Nor are decisions by prison officials concerning the allocation of limited resources, such as decisions concerning the appropriate amount and scope of security protection in a federal building, "grounded in social, economic, and political considerations.'" *Fanoele v. United States*, 975 F.Supp. 1394, 1401 (D. Kan. 1997) (quoting *Zielinski v. United States*, 1996 WL 329492, at *16 (4ᵗʰ Cir. June 6, 1996)); *see also Calderon*, 123 F.3d at 951 (holding prison officials' decision whether to take disciplinary action against a prisoner who later injured another inmate was a discretionary decision grounded in considerations of public policy); *Buchanan*, 915 F.2d at 972 (holding "prison officials' minute-to-minute decision making in the chaotic circumstances of a riot is a classic example of an activity requiring the exercise of discretion," and discussing congressional intent behind inmate safety and security).

### Analysis

Although Plaintiff alleges prison officials did not patrol the recreation yard at all, the evidence submitted by the government, and indeed Plaintiff's own attachments belie this characterization.  The incident occurred at or near 7:06 p.m.  According to both testimony of the officers on duty, Romero and Martin, accounts by inmates, and specific post orders suggesting open movement commenced at 6:55 and continued until 7:05 p.m., the incident occurred during or near the time designated for open movement.  Officer Romero indicated that she was guarding the metal detectors during this time,  monitoring inmate movement in and out of the recreation area, was "en route back to the recreation yard when the incident occurred."  Pl's Response, Ex. 2, at p. 14.  Even Plaintiff's own affidavit suggests that *no guards were patrolling the recreation area for ten or 15 minutes prior to the incident.*  This time, however, encompassed the open

16

movement of the inmates. Even the specific post orders do not suggest recreation officers should patrol the recreation yard during open movement. Rather, post orders indicate the officers should patrol during closed movement times. There is no evidence or even argument that recreation yard officers sat idly by while they watched a group of inmates gather, but did nothing to respond to a gathering threat. The evidence shows they were tending to inmates as they entered and left the recreation area. Moreover, Plaintiff argues generally that the history of gang violence or some general knowledge that gang violence would erupt is enough to foreclose protection under the discretionary function exception because this action was not considered in policy considerations. This argument also fails. The discretionary decisions of prison officials relating to inmates' movement in and out of the recreation yard during "open movement" times is precisely the kind of safety and security measures policymakers had in mind when they established BOP guidelines and passed legislation relating to standards of care and security in prisons. *See* 18 U.S.C. § 4042(a) (outlining general standard of care for BOP and authority of BOP to enact regulations to effectuate their duties). General negligence, or imprudent decisions in hindsight do not foreclose application of the discretionary function exception.

In conclusion, the statute and specific post orders cited by Plaintiff do not prescribe a mandatory course of conduct for prison officials to follow when making decisions regarding inmate safety and security. Plaintiff's complaint does not rebut the presumption established in *Gaubert* that such discretionary decisions by prison officials are based on BOP policy considerations and thus shielded by the discretionary function exception. The Court, therefore, sustains Defendant's objection concerning the application of the discretionary function analysis to the facts of this case.

## C. Defendant's Objection Regarding "Operational Function Analysis"

The Magistrate Judge's reference to the "operational function" of the guards' performance is brief, comprising only one paragraph of the R&R, and the vast majority of the opinion states the correct standard and applies the two-part test clarified in *Gaubert* to the facts and allegations of the present case. To the extent, however, that

17

the Magistrate Judge relied on an "operational function" analysis for its conclusions concerning the applicability of the discretionary function exception, this Court will not adopt this reasoning because the Supreme Court has found that "discretionary conduct is not confined to the policy or planning level." *Gaubert*, 499 U.S. at 326; *see also supra* (discussion of discretionary function exception). The Court, therefore, sustains Defendant's objection concerning the proper discretionary function analysis in this case.

## VI. Conclusion

Because the Court finds the discretionary function exception to the Federal Tort Claims Act deprives this Court of jurisdiction over Plaintiff's claim, the Court **DECLINES to adopt** the Magistrate Judge's Report and Recommendation, **GRANTS** Defendant's Motion to Dismiss [Dkt. No. 18-1], and **DISMISSES** Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction over the subject matter. The Court **DENIES as moot** all other requested relief [Dkt. Nos. 18-2, 28-1, and 28-2].

DONE at Brownsville, Texas, this 28th day of September, 2004.

Hilda G. Tagle    10/7

United States District Judge